## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVIDI TECHNOLOGIES CORPORATION,<br><br>                    Plaintiff,<br><br>    v.<br><br>VISIBLE WORLD, INC. and CSC HOLDINGS, LLC,<br><br>                    Defendants. | Civil Action No.: 11-397 (RGA)<br><br>JURY TRIAL DEMANDED |

### FIRST AMENDED COMPLAINT

Plaintiff, Invidi Technologies Corporation ("Invidi") brings this Complaint for patent infringement against Visible World, Inc. ("VW"), and CSC Holdings, LLC ("Cablevision") and alleges as follows:

### PARTIES

1.      Plaintiff Invidi is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 750 College Road E., Suite 175, Princeton, New Jersey 08540. Invidi is a leading provider of addressable television advertising and marketing solutions for cable, satellite and telco video providers (collectively known as "Operators"). Through these solutions, Invidi's systems deliver advertisements to specific audience segments that television advertisers wish to target.

2.      Upon information and belief, Defendant VW is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 460 West 34th Street, Floor 14, New York, New York 10001. Upon information and belief, VW has

historically been a provider of versioning software which enables cable operators to deliver multiple versions of the *same* television advertisement, and has more recently begun offering to cable operators addressable advertising solutions which differ from versioning.

3.  Upon information and belief, Defendant CSC Holdings, LLC is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 1111 Stewart Ave, Bethpage, NY 11714.  Upon information and belief, CSC Holdings, LLC, a wholly owned subsidiary of Cablevision Systems Corporation, is a cable operator that employs addressable advertising solutions, and is the sole cable operator within the Cablevision Systems Corporation family of companies.

## NATURE OF ACTION

4.  This cause of action arises under Title 35 of the United States Code, and more particularly under 35 U.S.C. § 1 et seq.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b), because VW and Cablevision (collectively, the "Defendants") are residents of and subject to personal jurisdiction in this District.

## INVIDI

7.  Invidi was founded in 2000 by a group of inventors and entrepreneurs to resolve certain fundamental problems in traditional television advertising on advertising-supported broadcast television networks.  Conventional broadcast television is advertising-supported in that

network operators and content providers receive revenue from advertisers whose ads run on the network while program content is being broadcast. Conventional broadcast television advertising has a broad reach to viewers as it is broadcast to large audiences. However, this broad reach is also inefficient because it often reaches beyond the advertiser's real target audiences, or fails to reach the advertiser's real target, and either way results in significant "waste."

8.  For example, only a portion of the U.S. population owns a dog. Yet in order for Purina to advertise its Dog Chow on traditional broadcast television, it would have to buy an advertising spot on a program, such as Grey's Anatomy. Everyone watching that show would see the advertisement, including a large percentage of the viewers who are not dog owners and have no need to purchase, or learn about, dog food. Even if Purina were to buy the spot on Grey's Anatomy, that purchase would still not reach the many dog owners who happened to be watching another program at the same time when Grey's Anatomy was airing. In other words, a television advertisement is often seen by large portions of audiences to whom it is not specifically targeted. At the same time, the television advertisement is *not* seen by many viewers watching another program at the same time who the advertiser wishes to target and who might be interested to learn about the advertised product.

9.  From the consumers perspective, if an advertisement is not relevant to the viewer, then the viewer will likely not be interested in watching the advertisement, will likely not respond positively to the advertisement, and the advertisement will likely be ineffective. Consequently, advertisement "waste" is a problem for both the consumer and the advertiser. If consumers have to view advertisements in an ad-supported environment, they prefer advertisements that are more relevant to them, and advertisers will have more efficient and

3

profitable campaigns if the advertisements are delivered to consumers interested in the products or services being advertised.

10. Invidi has developed intelligent software which enables comprehensive addressable television advertising and promotion campaigns that advertisers, media buyers, and Operators can use to dramatically increase the efficiency and effectiveness of television advertising and reduce advertisement "waste," all by making television advertisements addressable to the desired audiences which advertisers wish to target.

11. Invidi's powerful suite of advanced advertising tools enables advertisers, content providers, and Operators to more accurately target television viewers with pinpoint accuracy and thereby enhance existing revenue streams and cultivate significant new revenue opportunities for Operators and advertisers. Additionally, Invidi's technology has been architected in a manner that enables Operators who implement the technology to safeguard viewer privacy and ensure that personally identifiable information regarding particular viewers or households is not improperly gathered, retained, disclosed or used, all in accordance with the applicable laws, regulations, and Operator policies.

12. Invidi's proprietary technology enables Operators to simultaneously deliver multiple and distinct streams of commercials to different televisions or television households during a single commercial break and/or across multiple television programs while also controlling the reach, frequency, and separation of the commercials. Thereby, Invidi's technology allows three (3) objectives to be achieved: (i) advertising inventory effectiveness and revenue opportunities for Operators and content providers are increased; (ii) advertisers, media buyers and Operators are provided a truly measurable and accountable way to deliver television

commercials to the desired viewers; and (iii) viewers – who must be subjected to advertising in an ad supported network model – receive more relevant ads in a privacy-protected manner.

13. Invidi has been granted multiple patents by the United States Patent and Trademark Office (USPTO) for key functionality underlying its addressable advertising system, including aspects of delivery reporting to permit Operators to measure the effectiveness of targeted advertisement campaigns while maintaining viewer privacy, selection processes to deliver more relevant advertisements in bandwidth-constrained networks, household classification techniques useful in bandwidth constrained networks, and technology to more accurately determine which one of multiple viewers are using a particular set-top box at any given time.

14. Invidi also owns patents covering the distribution of commercial messages to individually addressable subscriber terminals on a network where the delivery is based on household data, such as demographic information.

15. One such patent is United States Patent No. 5,661,516 ("the '516 Patent"), entitled "System and Method for Selectively Distributing Commercial Messages over a Communications Network." That patent was duly and legally issued on August 26, 1997 by the United States Patent and Trademark Office and Invidi is the assignee and sole owner of all right, title, and interest in the patent. A copy of the '516 Patent is attached hereto as Exhibit A.

16. The '516 Patent is valid and enforceable.

17. The inventions of the '516 Patent include a system and method for distributing commercial messages to individually addressable subscriber terminals on a network.

18. In this manner, the invention of the '516 Patent is able to provide addressable advertisements to set top boxes in a cable, satellite or telco network and thus substantially reduces the problem of advertising waste that is endemic in conventional television advertising schemes.

19. VW and Cablevision were notified of, and have actual knowledge of, the '516 patent.

## VISIBLE WORLD

20. VW's products now provide household addressable advertisements based on viewer demographics and other data-driven conditions.

21. VW offers the Visible World Connect product and/or other products that provide an addressable distribution platform which enables advertisers to target specific households.

22. Through the Visible World Connect product and/or other products, VW can target advertisements to specific individually addressable cable subscribers' set top boxes.

23. VW offers a web-based campaign management tool, the Visible World Conductor, which enables advertisers to automate data-driven ad targeting. The Visible World Conductor facilitates segmentation of TV ads to enable household addressable advertisement campaigns.

24. Through Visible World Connect and Conductor and related products, VW provides addressable advertising solutions allowing advertisers to target specific households based, at least in part, on household demographic information.

25. The household demographic information is stored in a database accessible to the VW products and is derived from third party demographic data repositories such as Nielsen, Experian, and Acxiom.

26. The VW products enable household addressable advertising by associating particular advertisements with the set top boxes of the relevant households based in part on demographic data.

27. On information and belief, VW has partnered with at least Experian to provide demographic data for certain household addressable advertising campaigns.

28. On information and belief, VW has agreements with at least Experian under which Experian provides data to support VW's household addressable advertising campaigns.

29. On information and belief, VW has agreements with Cablevision to provide household addressable advertising solutions for the Cablevision network.

30. VW's products for household addressable advertising are installed inside one or more of Cablevision's operating centers. The VW household addressable advertising system (or systems) provides household addressable advertising to the homes of at least approximately 3,000,000 Cablevision customers.

## CABLEVISION

31. Cablevision is one of the largest cable providers in the United States, with most customers residing in New York, New Jersey, Connecticut and parts of Pennsylvania. Cablevision provides its customers with digital cable, high-speed internet connections and voice over IP phone service.

32. Through the use of VW products, Cablevision is using demographic information, provided by at least the third-party data firm Experian. That demographic information is associated with subscriber households in the Cablevision network and is ultimately linked to the set-top box or boxes of subscribers. This demographic information includes, for example, at least one or more of age, gender, income, ethnicity and whether the subscriber has children or pets. Cablevision uses this demographic information to provide household addressable advertising on its cable network.

33. Cablevision provides household addressable advertising by associating the network address of the set top boxes of its subscribers with one or more commercial messages.

34. Cablevision has installed the VW household addressable advertising system in one or more head ends of Cablevision and receives from the VW system or otherwise both media assets and information correlating those media assets to specific households and subscriber set top boxes.

35. Cablevision uses the information from the VW household addressable advertising system to transmit commercial messages to specific households based on the set top box address of the set top boxes associated with the household being targeted by the addressable advertisement.

36. Through the use of VW products, Cablevision currently provides household addressable advertising to at least approximately 3,000,000 Cablevision customers.

## COUNT I
**(Infringement By Visible World of United States Patent No. 5,661,516)**

37. Paragraphs 1 through 36 are incorporated by reference as if stated fully herein.

38. Defendant VW has been and is now directly infringing, inducing infringement, and/or contributorily infringing one or more claims of the '516 Patent under 35 U.S.C. § 271 by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, and/or partnering with Cablevision to operate, household addressable advertising systems including, for example, Visible World Connect and Conductor, installed in communications networks, including, for example, the Cablevision communications network.

39. Invidi has been, and will continue to be, damaged by VW's infringement of the '516 Patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## COUNT II
### (Infringement By Cablevision of United States Patent No. 5,661,516)

40. Paragraphs 1 through 39 are incorporated by reference as if stated fully herein.

41. Defendant Cablevision has been and is now directly infringing, inducing infringement, and/or contributorily infringing one or more claims of the '516 Patent under 35 U.S.C. § 271 by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, and/or partnering with VW to operate, household addressable advertising systems including, for example, Visible World Connect and Conductor, installed in the Cablevision communications network.

42. Invidi has been, and will continue to be, damaged by Cablevision's infringement of the '516 Patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## COUNT III

**(Joint Infringement By Cablevision and Visible World
of United States Patent No. 5,661,516)**

43.     Paragraphs 1 through 42 are incorporated by reference as if stated fully herein.

44.     Defendants Cablevision and Visible World have been and are now jointly and directly infringing, inducing infringement, and/or contributorily infringing one or more claims of the '516 Patent under 35 U.S.C. § 271 by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, and/or operating, household addressable advertising systems including, for example, Visible World Connect and Conductor, installed in the Cablevision communications network.

45.     Invidi has been, and will continue to be, damaged by Cablevision's and Visible World's joint infringement of the '516 Patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Invidi prays for judgment as follows:

A.     That VW and Cablevision each has infringed, individually and jointly, either directly, by inducement, or contributorily, the '516 Patent;

B.     That VW and Cablevision and their officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, inducement of infringement, and contributory infringement of the '516 Patent;

  C. That Invidi be awarded damages adequate to compensate it for VW's and Cablevision's infringement of the '516 Patent, such damages to be determined by a jury, and, if necessary to adequately compensate Invidi for the infringement, that Invidi be awarded an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales and that all such damages be awarded to Invidi with pre-judgment and post-judgment interest; and

  D. That Invidi be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

Invidi hereby demands a trial by jury on all issues so triable.

Dated: September 13, 2011

FISH & RICHARDSON P.C.

By: */s/ Thomas L. Halkowski*
  Thomas L. Halkowski (#4099)
  halkowski@fr.com
  222 Delaware Avenue, 17th Floor
  P.O. Box 1114
  Wilmington, DE 19899-1114
  Tel: (302) 652-5070

  *Of Counsel:*

  Frank E. Scherkenbach
  Steven R. Katz
  FISH & RICHARDSON P.C.
  One Marina Park Drive
  Boston, MA 02210
  Tel: (617) 542-5070

  *Attorneys for Plaintiff*
  *Invidi Technologies Corporation*