IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVIDI TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-397 (RGA) (CJB) |
| | ) | |
| VISIBLE WORLD, INC. and CSC HOLDINGS, LLC, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

**ANSWERING BRIEF OF CSC HOLDINGS, LLC IN OPPOSITION TO INVIDI TECHNOLOGIES CORPORATION'S MOTION FOR SANCTIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com
*Attorneys for Visible World, Inc. and CSC Holding, LLC*

OF COUNSEL:

John E. Nathan
Catherine Nyarady
Andrew S. Brown
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Visible World, Inc. and CSC Holding, LLC*

Benjamin Hershkowitz
R. Scott Roe
Justin Solomon Nematzadeh
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

*Attorneys for CSC Holdings, LLC*

November 14, 2012 - Original Filing Date
November 20, 2012 - Redacted Filing Date

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. NATURE AND STAGE OF THE PROCEEDING ........ 1

II. SUMMARY OF ARGUMENT ........ 1

III. STATEMENT OF FACTS ........ 3

A. Cablevision Provided an Adequately Prepared Witness in Response to Invidi's First Rule 30(b)(6) Notice to Cablevision ........ 3

B. Invidi Demands Another Witness, But Does Not Meet and Confer ........ 4

C. Cablevision Agrees to Provide Another Witness ........ 5

D. Invidi Takes Ms. Healy's Deposition on the Narrowed Technical Topics and the Non-Technical Rule 30(b)(6) Topics ........ 8

E Invidi Notices and Takes Additional Depositions ........ 9

F. Invidi Files the Motion for Sanctions ........ 10

IV. ARGUMENT ........ 11

A. Cablevision Complied With Its Discovery Obligations ........ 11

1. Stephanie Mitchko Testified to the Full Extent of Cablevision's Knowledge on the Narrowed Topics ........ 12

2. Testimony Outside the Scope of the Narrowed Topics is Not Relevant ........ 14

B. Cablevision Did Not Fail to Appear ........ 15

C. No Additional Expenses or Fees Were Caused by the Alleged Misconduct ........ 16

D. An Award of Sanctions Would Be Unjust ........ 17

E. There Is No Basis For Sanctions Related to Invidi's Amended Second Notice (In-Band and Out-of-Band Protocols) ........ 19

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. St. Paul Travelers Ins. Co.*,
670 F.3d 119 (1st Cir. 2012) .......................................................................................16

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*,
228 F.3d 275 (3rd Cir. 2000) ...................................................................................15, 16

*Tollett v. City of Kemah*,
285 F.3d 357 (5th Cir. 2002) .......................................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26..........................................................................................................20

Fed. R. Civ. P. 30.................................................................................................. *passim*

Fed. R. Civ. P. 37.................................................................................................. *passim*

D. Del. LR 7.1.1..............................................................................................................19

## I. NATURE AND STAGE OF THE PROCEEDING

Defendant CSC Holdings, LLC ("Cablevision")[1] opposes Invidi Technologies Corporation's ("Invidi") Motion for Sanctions Against CSC Holdings, LLC (D.I. 134). This is Cablevision's answering brief in response to that motion.

## II. SUMMARY OF ARGUMENT

Throughout this litigation, Cablevision has acted reasonably and in good faith, and has complied fully with its discovery obligations under the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, and the Court's Orders. Invidi's motion for sanctions is the most recent salvo in a litigation strategy directed at harassing Cablevision for working with Invidi's competitor, Visible World. [redacted] As set forth herein, Invidi has conducted discovery, not in a manner designed to efficiently obtain information needed for its case, but to manufacture unnecessary discovery disputes, including this motion. Invidi's motion is without merit and should be denied.

In considering this motion, it is important to keep in mind the difference between what has transpired in this case, and what Invidi alleges. Cablevision initially designated its most knowledgeable employee—Stephanie Mitchko, an engineer and Cablevision Senior Vice President—to testify regarding the technical topics contained in Invidi's First Notice of Rule

---

1 On September 14, 2012, Invidi amended its complaint to substitute CSC Holdings, LLC for Cablevision Systems Corporation as a defendant. (D.I. 103). The distinction between the two entities is not material to this motion, so this brief refers to both entities interchangeably as "Cablevision."

30(b)(6) Deposition to Cablevision.[2] Ms. Mitchko was adequately prepared, especially in light of the breadth and vagueness of the topics, and testified competently and substantively as to those topics for nearly six hours. As Invidi acknowledges, Ms. Mitchko "had much of the knowledge Invidi sought[.]" Invidi Br. at 1.

Some of the questions directed to Ms. Mitchko related to the inner workings of Visible World equipment. In response, Ms. Mitchko testified that she did not have the requested information, and that it was unlikely anyone within Cablevision had such knowledge, and suggested the logical way to get such information was directly from Visible World.

Rather than seek the information from Visible World, which provides and operates the underlying equipment, Invidi insisted on an additional Cablevision Rule 30(b)(6) deponent. Cablevision agreed to designate an additional witness for the limited purpose of providing any additional information Cablevision might have on a specific, narrowed subset of topics, but again told Invidi that it likely would not have any additional information.

Following an investigation, Cablevision determined that it in fact did not have any additional information on those narrowed topics. Given that Cablevision's witness would merely confirm that Cablevision had no further knowledge, and because Cablevision already had to designate another Rule 30(b)(6) witness to testify regarding several non-technical topics noticed separately by Invidi, Cablevision designated Mary Healy to testify to Cablevision's lack of additional knowledge on the narrowed technical topics beyond what was provided by Ms. Mitchko. Ms. Healy was a logical choice to testify as to the non-technical topics. For seven hours, she testified competently on these topics, as well as testifying to Cablevision's lack of any supplemental knowledge of the relevant technical topics.

---

2 Ms. Mitcho is, and at all relevant times has been, the lead Cablevision engineer handling addressable advertising matters.

Critical to this motion, neither Ms. Mitchko nor Ms. Healy ever testified (or even implied) that there was no one else within Cablevision who had any knowledge of the accused systems beyond what had already been provided. Rather, they indicated that, *with respect to the questions directed to the inner working of Visible World equipment*, no one else within Cablevision had additional information.

Invidi then noticed the individual deposition of James Dammers, a Cablevision engineer who reports to Ms. Mitchko. Given the nature of his job, Mr. Dammers was able to provide knowledgeable testimony on technical matters, sometimes even beyond what had previously been provided by Ms. Mitchko.[3] As with both Ms. Mitchko and Ms. Healy, however, Mr. Dammers was unable to provide ***any*** additional information within the scope of the previously narrowed Rule 30(b)(6) topics about which Ms. Healy had testified.

Cablevision has complied fully with its discovery obligations. Moreover, given the minimal time spent in the depositions of Ms. Healy and Mr. Dammers on the topics which are relevant to this motion, Invidi would still have incurred the same expenses for those depositions. For those reasons, as well as those others discussed below, Invidi's motion for sanctions should be denied.

## III. STATEMENT OF FACTS

Invidi provides a lengthy recitation of facts, but omits information critical to the resolution of this motion.

### A. Cablevision Provided an Adequately Prepared Witness in Response to Invidi's First Rule 30(b)(6) Notice to Cablevision

On June 12, Invidi took the deposition of Ms. Mitchko, Cablevision's Rule 30(b)(6) designee on the topics contained in Invidi's First Notice of 30(b)(6) Deposition to Cablevision.

[3] In fact, Mr. Dammers's deposition lasted nearly 5 hours, the vast majority of which dealt with topics ***outside*** of those topics that are the subject of this motion.

Ms. Mitchko is an engineer and the Senior Vice President of Interactive Technology at Cablevision, the group responsible for working with Visible World on the overall development and implementation of the accused systems and processes from a technical perspective, and has "broad knowledge of the entire platform." Ex. 2 at 76:9-14, 332:13-14.[4] The topics noticed by Invidi were vague and overbroad. *See* (D.I. 35), Sch. A ("1. Cablevision's implementation of household addressable advertising, the computer systems involved in such implementation, and the functions of those computer systems."). Invidi made no attempt to narrow its topics or clarify the information it sought. Ms. Mitchko testified subject to Cablevision's objections. Although Cablevision's ability to prepare Ms. Mitchko was necessarily limited by the nature of Invidi's topics, she testified for nearly six hours and in detail regarding the technical operation of the accused systems and processes. Ms. Mitchko provided Invidi with most of what it sought. Invidi Br. at 1.

**B. Invidi Demands Another Witness, But Does Not Meet and Confer**

On June 18, Invidi demanded a new witness on eight of Invidi's fourteen noticed topics. 7/18/2012 Ltr. from Blumenfeld to J. Burke (D.I. 70), Ex. 1. Cablevision did not agree that a new witness was required, and told Invidi that much of the information it sought seemed to be exclusively in the control of Visible World, Cablevision did not refuse Invidi's demand, but instead requested that Invidi identify with specificity the information it was seeking so that Cablevision could adequately prepare a witness and avoid serial depositions. *Id.*, Ex. 2. Rather than providing the requested information or engaging in a meet and confer, Invidi demanded that a conference with the Court be scheduled immediately. *Id.*, Exs. 3, 4. Invidi's position that

4 Unless otherwise noted, citations to numbered exhibits are to the exhibits to the Declaration of Brian K. Wells in Support of Invidi Technologies Corporation's Motion for Sanctions Against CSC Holdings, LLC (D.I. 136).

Cablevision "refused" to provide a witness (Invidi Br. at 1) and "relented" (Invidi Br. at 4) only after a motion to compel (Invidi Br. at 1) is simply incorrect.

**C. Cablevision Agrees to Provide Another Witness**

On July 10, Cablevision again reached out to Invidi requesting guidance as to what information it sought from another Rule 30(b)(6) deposition. 7/18/2012 Ltr. from Blumenfeld to J. Burke (D.I. 70), Ex. 5. Eventually, Invidi listed the specific information it was seeking. *Id.* Invidi also stated that "if the answer [with respect to the narrowed topics] is that *nobody in Cablevision has the knowledge* on any of these topics, *then the witness should so state*." *Id.* (emphasis added). The specific topics relevant to this motion (Invidi Br. at 3 n.5) were also listed in its July 17, 2012 letter brief to the Court under the heading "The Format of Information Used By The System For Addressable Advertising" and included:

- The campaign information input into the CPSU (Client Profile Server Unit), including segmentation files or otherwise, how the campaign information is input, and who does the inputting.
- The campaign information input into the CASU (Client Ad Server Unit), including the number of advertisements loaded per campaign and their format (e.g., are they bundled, loaded separately, formatting, etc.) and what information identifies advertisements with segments (e.g., some sort of embedded encoding, separate segmentation file, order of advertisements, etc.).
- The information output from the CASU that associates advertisements with channels or segments, if any.
- The information output from the CPSU that provides profile information to the set top boxes (which Ms. Mitchko testified included some sort of "data word").
- The storage in the set top boxes of segmentation and addressable advertising, including the "data word" mentioned by Ms. Mitchko, its content, format, and meaning, and any other information stored concerning specific campaign addressable advertisements.

Ex. 3. All of these topics involve Visible World technology, and Cablevision has testified that it does not have this information.

Ms. Healy was offered to testify only on technical information related to the above topics as a supplement to Ms. Mitchko's testimony. That is therefore the only information on which Invidi's request for sanctions can be based. Invidi cannot complain about Ms. Healy's lack of knowledge of unidentified "technical aspects of the accused Cablevision system." Invidi Br. at 10. Admittedly, an engineer such as Mr. Dammers, knows more about the overall system than a business witness such as Ms. Healy. Invidi Br. at 16. Mr. Dammers also might have more knowledge on certain issues than Ms. Mitchko. But that is not relevant here.

What is relevant is that, in an effort to avoid an unnecessary discovery dispute, Cablevision agreed to provide an additional witness on these narrowed topics, "*even if just to confirm that Cablevision doesn't have the information requested*." 7/18/2012 Ltr. from Blumenfeld to J. Burke (D.I. 70) (emphasis added). Through Cablevision's investigation into the very narrow outstanding technical topics that were the subject of the 30(b)(6) notice, it became apparent that Cablevision had no knowledge beyond that already testified to by Ms. Mitchko. Accordingly, in the interest of reducing the burden on all parties, rather than designate an engineer whose sole purpose would be to testify regarding topics on which Cablevision had no additional information, Cablevision designated Ms. Healy, who was also designated to testify regarding other narrowed Rule 30(b)(6) topics within her area of expertise, which is related to the operational aspects of individual campaigns.

In response, Invidi demanded that Cablevision designate "the most knowledgeable witness" on the narrowed technical topics. Ex. 4. Cablevision found that it had no responsive information on the narrowed topics beyond the prior testimony of Ms. Mitchko. When Cablevision apprised Invidi that it had already provided a knowledgeable witness, Ms. Mitchko, that it had no additional information on the narrowed technical topics, and that Ms. Healy would

be the 30(b)(6) deponent on this and other non-technical issues, Invidi requested an emergency conference with the Court. *See* 8/2/2012 Joint Ltr. to J. Burke (D.I. 81). As Invidi notes in its opening brief, during that conference, counsel for Invidi stated: "We also issued interrogatories, a new interrogatory a month and a half ago say, Okay. Just be very specific. Here's the information we want. And they responded to that interrogatory. It was interrogatory 14 for the record with a number of objections."[5] Invidi Br. at 5. Invidi's Interrogatory No. 14 asked:

> Describe in detail ***the precise content and format of the data*** related to household addressable advertising campaigns loaded into the CPSU and/or CASU (including, at a minimum, the data used to associate commercial messages to segments and set top boxes to segments), and identify all documents describing that data. (emphasis added)

Invidi also notes that the Court asked counsel for Cablevision whether Ms. Healy would not have sufficient knowledge to answer follow-up questions. Invidi states that "Cablevision represented that this was not going to happen." Invidi Br. at 7. This did not happen, because Cablevision had no additional information on the narrowed topics to supplement Ms. Mitchko's responses to follow-up questions in *her* deposition. Invidi omits to state that Cablevision also told the Court that "the topics . . . were narrowed by the parties[,]" and although its investigation was still ongoing, "we also told them that it may be that on certain topics the witness isn't going to be able to do anything other than confirm that Cablevision doesn't have the information requested." Ex. 5 at 18. Cablevision also stated that "Ms. [Mitchko] was an engineer and was most knowledgeable on the topics that were noticed. And they were able to ask follow-up questions from her. In general . . . when we followed up with other individuals at Cablevision, they had . . . limited or no knowledge beyond what Ms. [Mitchko] was able to testify about." *Id.* at 19. Because Cablevision had no supplemental information on the narrowed topics beyond

---

[5] Cablevision objected to Interrogatory No. 14, among other reasons, as seeking information not within the possession, custody, or control of Cablevision.

what Ms. Mitchko testified to, there were no follow up questions it could answer more fully in a second 30(b)(6) deposition.

### D. Invidi Takes Ms. Healy's Deposition on the Narrowed Technical Topics and the Non-Technical Rule 30(b)(6) Topics

On August 9, Invidi took the deposition of Ms. Healy. In the morning, she was asked what she had done to prepare for her deposition, and Invidi elicited the full extent of Cablevision's corporate testimony with respect to the narrowed technical topics: that Cablevision had no further information regarding the narrowed technical topics. Ex. 6 at 16:8-25:2, 71:25-75:7; *see also* Ex. 6 at 270:2-273:14. Thus, Ms. Healy testified to "the same extent" that a Cablevision engineer would have on the narrowed technical topics, as Invidi requested. Invidi Br. at 7.

Ms. Healy testified for a full seven hours, most of which was spent on the other (non-technical) topics for which she had been designated and on information that was outside the scope of the deposition but within her personal knowledge. Thus, Invidi certainly would have taken her deposition, whether or not Cablevision had designated her as its follow-up 30(b)(6) witness on the narrowed technical issues.

In the afternoon, near the end of the deposition, Invidi brought in a second attorney to question the witness. *Id.* at 228:16-229:4. That attorney had not been present for most of the deposition, including for the portion in the morning where Ms. Healy had been questioned on the narrowed technical topics. *See id.* Cablevision objected to Invidi double teaming the witness, but when Invidi insisted that the deposition could only continue if the second questioner were allowed, Cablevision stated its objection for the record and allowed the deposition to continue. *See id.* The second questioner proceeded to question Ms. Healy again at length, even though she had already testified fully as to her knowledge regarding the narrowed technical topics. *Id.* at

229:22-253:2. Although Invidi omitted the objections from the portions of Ms. Healy's deposition copied into its brief, the questions were objected to as being outside the scope of the deposition and having been asked and answered. *Id.*

**E Invidi Notices and Takes Additional Depositions**

On August 13, 2012, following the deposition of Ms. Healy, Invidi served a notice to take the deposition of another Cablevision engineer, James Dammers. (D.I. 86). Invidi also served a second Rule 30(b)(6) notice of Cablevision. (D.I. 85). Then, on September 5, 2012, Invidi amended its second Rule 30(b)(6) notice. (D.I. 96). The topics in Invidi's amended second notice relate generally to communications on Cablevision's network, particularly through the use of what is known as the out-of-band network.[6] *Id.* On September 19, Cablevision objected to Invidi's amended second notice but indicated that it would, subject to its objections, designate a witness to testify regarding the noticed topics.

On September 20, Invidi took the deposition of Mr. Dammers. Invidi questioned him at length regarding technical issues, covering similar ground as was covered with Ms. Mitchko. Ex. 7. In large part, Mr. Dammers provided the same information that Invidi had already obtained from Ms. Mitchko. And, consistent with Ms. Healy's testimony, Mr. Dammers had no additional information within the scope of the narrowed technical topics that are the subject of Invidi's motion. [redacted]

---

6 Basically, out-of-band refers to communications which occur outside of the cable network's audio/video channels. These areas are outside the scope of the narrowed technical topics for which Ms. Healy was offered.

Finally, on September 21, Invidi took its first deposition of a Visible World witness.

**F. Invidi Files the Motion for Sanctions**

A month later, on Friday, October 19, 2012, Invidi informed Cablevision that it intended to move for sanctions the following Monday. Ex. B attached hereto (10/18/2012 Email from Katz to Nyarady). Cablevision wrote back stating that it believed Invidi needed to follow the Court's discovery dispute procedures before filing such a motion. *See* Ex. B. Without any attempt to meet and confer or even respond to Cablevision, Invidi filed this motion on Monday, October 22, 2012.

As outlined above, Cablevision never misled Invidi about the testimony it would provide. On the contrary, on multiple occasions, Cablevision told Invidi it did not have the information being sought and told Invidi where it could find such information (by deposing Visible World).

Further, Invidi has not been put to any additional expense or inconvenience. The Rule 30(b)(6) deposition of Ms. Mitchko provided Invidi with much of the technical information it sought. Beyond the minimal time spent establishing that Cablevision had no further knowledge on the relevant technical subjects, the deposition of Ms. Healy provided Invidi with much of the non-technical information it sought. The deposition of Mr. Dammers also provided Invidi with other technical information (not the subject of a Rule 30(b)(6) Notice) it did not already have. Mr. Dammers' testimony, however, did not substantially add to the original 30(b)(6) deposition testimony of Ms. Mitchko on the narrowed topics. Given that Invidi deposed Mr. Dammers to obtain additional technical information unrelated to the 30(b)(6) topics, it cannot point to any additional expense it was forced to incur as a result of Cablevision's purported wrongdoing, even if he had provided the additional information Invidi sought in the narrowed technical topics (which he did not).

## IV. ARGUMENT

### A. Cablevision Complied With Its Discovery Obligations

Cablevision has acted reasonably and in good faith, and has complied fully with its discovery obligations, including the instructions of the Court. Stephanie Mitchko was well-qualified to testify in response to Invidi's Rule 30(b)(6) notice in light of the quality and scope of Invidi's topics. Nonetheless, in the interest of avoiding an unnecessary discovery dispute, Cablevision agreed to designate an additional witness to testify solely regarding any additional information Cablevision had on the narrowed technical topics, even, as it predicted, if only to confirm that it had no additional information. Following an investigation that confirmed that Cablevision had no additional information on those topics, Cablevision designated a witness to so testify.

At a minimum here, Invidi must show that there is information (1) within the scope of the narrowed technical topics, (2) that Ms. Mitchko was unable to provide, (3) that Mr. Dammers was able to provide.[7] Invidi does not even attempt to make such a showing, relegating the narrowed technical topics to a footnote (Invidi Br. at 3 n.5) and Ms. Mitchko's testimony to an exhibit (Ex. 2). Instead, Invidi spends page after page discussing testimony outside of the scope of the narrowed technical topics. *See, e.g.*, Invidi Br. at 10 (regarding "how the CPSU-Set top box communications work"), 12 (regarding types of MAC addresses and network layers), 13 (regarding the "operation of the 'in-band' and 'out-of-band' communications"). The reason is simple: Ms. Healy was adequately prepared and testified truthfully and accurately that Cablevision did not have any additional knowledge regarding the narrowed technical topics.

---

[7] Even if Invidi could make this showing, which it cannot, only a very small portion of the Dammers deposition that relates specifically to these narrowed technical topics would conceivably be relevant to this motion.

And Mr. Dammers did not add to Ms. Mitchko's testimony with respect to the narrowed technical topics.

**1. Stephanie Mitchko Testified to the Full Extent of Cablevision's Knowledge on the Narrowed Topics**

The narrowed technical topics relevant to this motion relate generally to the format and content of information that is loaded into, or transmitted between, systems that are developed and managed by Visible World, not Cablevision. *See supra* pp. 4-5. Invidi vaguely alleges that there were "gaps" in Ms. Mitchko's testimony that Ms. Healy was unable to fill in, and that Mr. Dammers was able to fill those gaps. But Invidi does not identify where in the deposition of Ms. Mitchko there are gaps on the narrowed technical topics. In each instance where Invidi has identified testimony from Mr. Dammers that would fall within the scope of the narrowed technical topics, not only does Invidi fail to demonstrate that Ms. Mitchko did not have the information, but, to the extent she was asked, Ms. Mitchko provided substantively the same information as Mr. Dammers.

To be clear, nobody at Cablevision, including Ms. Mitchko and Mr. Dammers, has detailed knowledge regarding the actual format and content of the information used by the systems that are developed, managed, and operated by Visible World, and so both necessarily made some educated assumptions regarding the data based on a general understanding of the operation of the system. For example, Ms. Mitchko testified that with respect to the profile sent from the CPSU to the set top box, she does not "know what the format looks like." Ex. 2 at 318:22-319:9. Similarly, Mr. Dammers testified that he was "not sure of the exact formats." Ex. 7 at 221:5-13. With respect to the data broadcast from the CASU, Ms. Mitchko testified that she did not "know the specific format of the data[.]" Ex. 2 at 147:25-148:10. Similarly,

Mr. Dammers testified that he could "only speak at a – at a high level" because he was "not sure of the exact format of what comes down." Ex. 7 at 173:4-9.

As to the information sent from the CPSU to set top boxes, Invidi cites to testimony from Mr. Dammers that [redacted] Invidi Br. at 10-11 (citing Ex. 7 at 219:5-10, 220:3-6). Invidi complains that "Ms. Healy knew none of this information." Invidi Br. at 11. But Ms. Mitchko—the original Rule 30(b)(6) designee—knew this information, and indeed, testified that [redacted] *See* Ex. 2 at 180:24-181:2, 317:7-319:9.[8]

As to the information broadcast by the CASU, Invidi cites to testimony from Mr. Dammers that [redacted] Invidi Br. at 11-12. Again, Invidi complains that "Ms. Healy knew none of this information." Invidi Br. at 12. But Ms. Mitchko did know that information, and indeed, testified that [redacted]

8 [redacted]

[redacted] *See*, *e.g.*, Ex. 2 at 20:5-20, 22:9-20. [redacted] Ex. 2 at 325:24-326:15.[9]

Cablevision agreed to provide an additional witness for the limited purpose of providing any additional information it had on very specific narrowed technical topics. The question is whether Mr. Dammers was able to provide technical information on the narrowed technical topics that Ms. Mitchko and Ms. Healy were not able to provide. The answer is no. As a result, Invidi's request that some unspecified portion of Mr. Dammers' deposition be deemed Rule 30(b)(6) testimony (Invidi Br. at 17) is unsupported.

**2. Testimony Outside the Scope of the Narrowed Topics is Not Relevant**

Invidi argues that Mr. Dammers "was able to offer useful testimony" regarding the technical operation of the accused systems and processes, while Ms. Healy was not. Invidi Br. at 10. To the extent that testimony was not duplicative of testimony provided by Ms. Mitchko, however, it was outside the scope of the narrowed technical topics. Cablevision asked Invidi to identify with specificity the areas in which it wanted additional information to try to avoid repeating unfocused serial depositions of Cablevision technical witnesses and more motions arguing that "a new witness is required." The purpose of the narrowed topics was to provide Cablevision with a fair opportunity to prepare a designee. Invidi cannot now complain that

9 [redacted]

Cablevision's designee was unprepared to testify regarding matters outside the scope of the deposition.[10]

For example, Invidi argues that Mr. Dammers "explained how the CPSU-Set top box communications work" and provided testimony regarding the "different network 'layers'" in the Open Systems Interconnection standardized network model. Invidi Br. at 10, 12. But Invidi cannot identify which of the narrowed technical topics it believes that testimony falls within, because it is outside the scope of all of the narrowed technical topics. Invidi also complains that "[t]here were details about the operation of the 'in-band' and 'out-of-band' modes of communication within the Cablevision network that even Mr. Dammers did not know." Invidi Br. at 13. Those topics are also outside the scope of any of the narrowed technical topics, and indeed, the same or similar topics are covered by Invidi's amended second Rule 30(b)(6) notice to Cablevision served after Ms. Healy's deposition.[11]

**B. Cablevision Did Not Fail to Appear**

Rule 37(d) provides for sanctions where "a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition[.]" Invidi argues that Cablevision should be sanctioned, because "[p]roducing a witness who lacks any relevant knowledge and is unprepared is tantamount to producing no witness at all." Invidi Br. at 14 (citing *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3rd Cir. 2000)). Invidi further argues that Cablevision could not comply with its obligations under Rule

---

10 For the same reason, Invidi's complaint that Cablevision's preparation of Ms. Healy was insufficient (Invidi Br. at 16) is unavailing. Cablevision undertook the preparation necessary given the specific, narrow scope of the topics and the lack of any additional information on those specific, narrow topics within Cablevision.

11 Invidi has also asked the Court to compel Cablevision to provide a witness on these topics, even though they were covered by a separate notice. Cablevision addresses this issue below.

30(b)(6) by producing "a non-technical business analyst." *Id.* To the contrary, as discussed above, Cablevision determined after investigation that it had no additional knowledge on the narrowed technical topics and, accordingly, Ms. Healy was adequately prepared and capably testified as to Cablevision's relevant knowledge.

Sanctions for a failure to appear are unavailable in any event. This case is unlike *Black Horse Lane*, where the Rule 30(b)(6) designee had done "nothing except show his face," "refused to answer questions in an intelligent way," "refused to prepare," "and just literally thumbed his nose at the defendants and, frankly, at the Court." 228 F.3d at 300. In such a situation, it may be fair to say that the designee is "no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it." *Id.* at 304. That was clearly not the case here. Cablevision did not designate Ms. Healy out of pique, but because she was the witness most knowledgeable on several other Rule 30(b)(6) topics requested by Invidi on which Cablevision actually did have additional knowledge. Ms. Healy testified for a full seven hours, primarily on topics other than the narrowed technical topics. *See generally* Ex. 6. Accordingly, it cannot be said that Ms. Healy failed to appear for her deposition. Sanctions under Rule 37(d) are not appropriate. *See Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 124 (1st Cir. 2012).

**C. No Additional Expenses or Fees Were Caused by the Alleged Misconduct**

On a motion for sanctions for failure to comply with a court order or for failure to attend a deposition, reasonable expenses, including attorney's fees, are only available if they were "caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Expenses and fees cannot be recovered if "[d]iscovery dispute or no, those fees would have been incurred." *Tollett v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002). Because Invidi would have incurred the expenses and fees regardless of the alleged discovery misconduct, Invidi cannot recover those fees.

Invidi argued to the Court during the August 3, 2012 emergency teleconference, and repeats in its opening brief, that it was "being set up to really waste our time and have traveled to New York and burn attorney time, pay a court reporter, pay a videographer to get interrogatory responses." Invidi Br. at 6. But Invidi was demanding depositions of both the most knowledgeable witness as to certain non-technical topics, Ms. Healy, and the most knowledgeable witness as to technical topics generally. 8/2/2012 Joint Ltr. to J. Burke (D.I. 81). So, Invidi is requesting fees and expenses for depositions that it demanded. If Cablevision had designated Mr. Dammers as its witness on the narrowed technical topics, as Invidi had requested, Invidi would still have incurred the expense of taking two depositions.

Indeed, the reason Cablevision designated Ms. Healy on the narrowed technical topics was that she was already being deposed, and there was no reason to incur the expense of another deposition, given that Cablevision did not have any additional information on the narrowed technical topics. If Cablevision had designated Mr. Dammers on the narrowed technical topics, Invidi no doubt would have moved for fees and expenses following that deposition by arguing that Cablevision forced it to take an unnecessary deposition of Ms. Healy.

Both Ms. Healy and Mr. Dammers were questioned for most of their depositions on issues outside the scope of the narrowed topics. Invidi has thus no basis to seek fees and costs associated with these or any other depositions.

### D. An Award of Sanctions Would Be Unjust

An award of expenses and fees should be denied where "circumstances make an award of expenses unjust." *See, e.g.*, Fed. R. Civ. P. 37(b)(2)(C). Cablevision has conducted discovery reasonably and in good faith. This motion for sanctions is the culmination of a pattern by Invidi of creating discovery disputes, and wasting time and money, rather than a legitimate attempt to obtain relevant discovery.

Invidi took three depositions of Cablevision prior to taking even a single deposition of Visible World, the party that actually had the information Invidi sought. Invidi argues that it was entitled to the discovery to the extent of Cablevision's knowledge regardless of what Visible World may or may not know. Invidi Br. at 3. That may be true, but nonetheless, Invidi would have been able to more efficiently probe Cablevison's knowledge if it had first learned how things worked from Visible World. Invidi's strategy has been, at best, an inefficient way to proceed.

Invidi has also flouted the Court's discovery procedures. First, Invidi did not make a good faith effort to meet and confer with Cablevision, and would not identify the specific areas on which it wanted additional information, before demanding a teleconference with the Court to request that Cablevision be compelled to provide another witness on technical topics. Such conduct served no purpose other than to allow Invidi to later claim that Cablevision did not comply with Invidi's discovery requests until after a motion was filed *See, e.g.*, Ex. 4 ("This deposition has already been the subject of two motions to compel."). Second, after Invidi informed Cablevision that it planned to file the motion, it then ignored Cablevision's response and filed the motion without a meet and confer. Ex. B (10/18/2012 Email from Nyarady to Katz). The Court's Order Regarding Discovery Material requires that a party obtain the Court's express approval before filing a Rule 37 motion. Unlike Invidi, Cablevision did not understand the Court's remarks during the August 3, 2012 discovery conference to give Invidi advance express approval to file a motion under Rule 37. *See* Invidi Br. at 1 n.2 (quoting Ex. 5 at 21:3-21:21).

Cablevision should not be punished for good faith attempts to resolve discovery disputes without resort to the Court. Cablevision could have refused to give Invidi an additional witness

on technical topics, but instead chose to provide Invidi with the discovery it requested once Invidi narrowed the scope of the requested technical topics. Now Invidi seems to be arguing that Cablevision's agreement to provide a second witness on narrowed technical topics required Cablevision to provide Invidi carte blanche to take repeat depositions of witnesses with any technical knowledge within Cablevision.

### E. There Is No Basis For Sanctions Related to Invidi's Amended Second Notice (In-Band and Out-of-Band Protocols)

Among the relief that Invidi requests is a deposition of a witness regarding "the in-band and out-of-band protocols used by Cablevision for communication to and from set top boxes." This request is improper. First, the requested topics are not within the scope of the narrowed technical topics that are the subject of Invidi's motion. Instead, Invidi's amended second of Rule 30(b)(6) notice of Cablevision, which was served after the deposition of Ms. Healy, covers these topics. Cablevision has responded to that notice and indicated that it will designate a witness to testify subject to its objections. Second, Invidi should not be allowed to use a motion for sanctions under Rule 37 as a back door to bypass the Court's discovery procedures. *See* Order Regarding Discovery Matters (D.I. 24) ("No motions to compel . . . shall be filed absent approval of the Court."). Third, Invidi has not made a good faith effort to meet and confer with Cablevision, or raise this issue with Cablevision at all, as is required before asking the Court to compel discovery. *See* D. Del. LR 7.1.1; Fed. R. Civ. P. 37(a)(1). For all of these reasons, as well as the reasons stated above as to why Invidi is not entitled to expenses and fees with respect to the deposition of Mr. Dammers, Invidi is not entitled to expenses and fees for this deposition.

Invidi also argues that Cablevision failed to adequately prepare its witnesses because they did not speak with any engineers from the "Network Management" group, which Invidi believes is the group within Cablevision with knowledge of Cablevision's in-band and out-of-band

networks. Invidi Br. at 16. But the operation of the in-band and out-of-band networks is not within the scope of the narrowed technical topics that are the subject of Invidi's sanctions motion. *See* Ex 3.

Invidi faults Cablevision for not listing any engineers from this group in its Initial Disclosures. Invidi Br. at 13-14. Cablevision was not required to list any such engineer, because Cablevision did not intend to use discoverable information from any such engineer to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(i). Indeed, [redacted], that system is not unique to household addressable advertising and it is difficult to see what relevance additional testimony regarding the out-of-band network could have. Nonetheless, Cablevision has responded to Invidi's amended second notice and indicated that it will designate a witness to testify subject to its objections.

## V. CONCLUSION

For the foregoing reasons, Cablevision respectfully requests that this Court deny Invidi's motion for sanctions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Regina S.E. Murphy*

Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com
*Attorneys for Visible World, Inc. and CSC Systems Holdings LLC*

OF COUNSEL:

John E. Nathan
Catherine Nyarady
Andrew S. Brown
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Visible World, Inc. and CSC Holdings LLC*

Benjamin Hershkowitz
R. Scott Roe
Justin Solomon Nematzadeh
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

*Attorneys for CSC Holdings LLC*

November 14, 2012 - Original Filing Date
November 20, 2012 - Redacted Filing Date

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 14, 2012, upon the following in the manner indicated:

Thomas L. Halkowski, Esquire — *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Frank E. Scherkenbach, Esquire — *VIA ELECTRONIC MAIL*
Steven R. Katz, Esquire
Brian K. Wells, Esquire
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
*Attorneys for Plaintiff*

*/s/ Regina S.E. Murphy*

Regina S.E. Murphy (#5648)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 20, 2012, upon the following in the manner indicated:

Thomas L. Halkowski, Esquire *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Frank E. Scherkenbach, Esquire *VIA ELECTRONIC MAIL*
Steven R. Katz, Esquire
Brian K. Wells, Esquire
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
*Attorneys for Plaintiff*

*/s/ Regina S.E. Murphy*

Regina S.E. Murphy (#5648)