IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVIDI TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-397 (RGA) (CJB) |
| | ) | |
| VISIBLE WORLD, INC. and CSC HOLDINGS, LLC, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

**VISIBLE WORLD, INC. AND CSC HOLDINGS, LLC'S ANSWERING BRIEF IN OPPOSITION TO INVIDI TECHNOLOGIES CORPORATION'S MOTION TO DISMISS STATE LAW AND ANTITRUST COUNTERCLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com
*Attorneys for Visible World, Inc. and CSC Holding, LLC*

OF COUNSEL:

John E. Nathan
Catherine Nyarady
Andrew S. Brown
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Visible World, Inc. and CSC Holding, LLC*

Benjamin Hershkowitz
R. Scott Roe
Justin Solomon Nematzadeh
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

*Attorneys for CSC Holdings, LLC*

November 14, 2012 - Original Filing Date
November 20, 2012 - Redacted Filing Date

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. STATEMENT OF FACTS .......... 1

A. The Counterclaims .......... 3

B. Defendants' Counterclaims Are Timely: Invidi Amended its Complaint at the Last Minute Possible .......... 5

C. Visible World's and Cablevision's Motion to Compel .......... 6

II. ARGUMENT .......... 7

A. Visible World Pleaded Facts Supporting its Claim that Invidi's Suit is Objectively Baseless .......... 8

B. Counterclaims Allege a Violation of § 2 of the Sherman Act .......... 13

C. Visible World's Counterclaims are Timely .......... 15

D. VW's Counterclaims Should be Kept in this Action .......... 18

III. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....................7

*Babyage.com, Inc. v. Toys "R" Us, Inc.*,
558 F. Supp. 2d 575 (E.D. Pa. 2008)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)....................14

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)....................10

*Carroll Touch, Inc. v. Electro Mech. Sys.*,
15 F.3d 1573 (Fed. Cir. 1993)....................11

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999)....................12

*Dicar, Inc. v. Stafford Corrugated Prods., Inc.*,
No. 2:05–cv–5426, 2009 WL 1796053 (D.N.J. June 22, 2009)....................9, 12

*Dimensional Commc'ns., Inc. v. OZ Optics, Ltd.*,
148 F. App'x 82 (3d Cir. 2005)....................17

*E.I. DuPont de Nemours & Co. v. Millennium Chems., Inc.*,
No. C.A. 97–237, 1999 WL 615164 (D. Del. Aug. 2, 1999)....................16

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
629 F.3d 1278 (Fed. Cir. 2010)....................11

*Fischer & Porter Co. v. Sheffield Corp.*,
31 F.R.D. 534 (D. Del. 1962)....................19

*Globetrotter Software, Inc.* v. *Elan Computer Group*,
362 F.3d 1367 (Fed. Cir. 2004)....................11

*Honeywell Intern., Inc. v. Univ. Avionics Sys.*,
343 F. Supp. 2d 272....................11

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)....................19

*In re Metoprolol Succinate Direct Purch. Antitrust Litig.*,
Nos. 06–52, 06–71, 2010 WL 1485328 (D. Del. Apr. 13, 2010) ....................8

*In re Theodor Groz & Sohne*,
972 F.2d 1352, 1992 WL 188908 (Fed. Cir. 1992) ....................18, 19

*In re Wellbutrin SR Antitrust Litig.*,
Nos. 04–5525, 5898, 05-396, 2006 WL 616292 (E.D. Pa. Mar. 9, 2006)....................10, 11

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons. Inc.*,
50 F.R.D. 415 (D. Del. 1970) ....................16

*Magnetar Technologies Corp. v. Six Flags Theme Parks Inc.*,
No. 07–127, 2011 WL 678707 (D. Del. Feb. 18, 2011) ....................10

*Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*,
No. C 06-04538, 2007 WL 219779 (N.D. Cal. Jan. 29, 2007) ....................20

*Municipal Revenue Svcs., Inc. v. Xspand, Inc.*,
No. 4:05CV671, 2006 WL 91358 (M.D. Pa. Jan. 12, 2006) ....................16, 17

*Nabi Biopharms. v. Roxane Labs., Inc.*,
No. 2:05-CV-889, 2007 WL 894473 (S.D. Ohio Mar. 21, 2007)....................19

*Platt v. Freedom Mortg. Corp.*,
No. 10–968, 2010 WL 4810652 (D.N.J. Nov. 16, 2010)....................11

*Prof'l Real Estate Investors, Inc. v. Columbia Pics. Indus., Inc.*,
508 U.S. 49 (1993)....................8, 11

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004)....................13

*QRG, Ltd. v. Nartron Corp.*,
No. 1:06-CV-1777, 2007 WL 1202967 (M.D. Pa. Apr. 23, 2007)....................17

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
No. 09–022, 2011 WL 6652346 (D. Del. Dec. 22, 2011) (reversed in part on other grounds by *Quantum Loyalty Sys. Inc.* v. *TPG Rewards Inc.*, 2012 WL 1134779 (D. Del. Apr 04, 2012))....................19

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997)....................14, 15

*Rochester Drug Co-op., Inc. v. Braintree Labs.*,
712 F. Supp. 2d 308 (D. Del. 2010)....................14

*Shionogi Pharma, Inc. v. Mylan, Inc.*,
No. 10–1077, 2011 WL 3860680 (D. Del. Aug. 31, 2011)....................8, 9

*Standard Chlorine of Delaware, Inc. v. Sinibaldi*,
Civ. A. No. 91–188, 1995 WL 562285 (D. Del. Aug. 24, 1995)....................16

*Syncsort Inc. v. Sequential Software, Inc.*,
50 F. Supp. 2d 318 (D.N.J. 1999)....................15

*Synopsys, Inc. v. Magma Design Automation*,
No. CIVA 05-701, 2006 WL 1452803 (D. Del. May 25, 2006)....................19

*Teva Pharm. Indus., Ltd. v. Apotex, Inc.*,
No. 07-5514, 2008 WL 3413862 (D.N.J. 2008)....................13

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
580 F. Supp. 2d 345 (D. Del. 2008)....................11

*Transmirra Products Corp. v. Monsanto Chemical Co.*,
27 F.R.D. 482 (S.D.N.Y. 1961)....................19

*United States v. Microsoft*,
253 F.3d 34 (D.C. Cir. 2001)....................14

*Wechsler v. Hunt Health Sys., Ltd.*,
186 F. Supp. 2d 402 (S.D.N.Y. 2002)....................16

**RULES AND STATUTES**

35 U.S.C. § 282 (2000)....................13

Fed. R. Civ. P. 12....................8, 11

Fed. R. Civ. P. 13(f)....................17

Sherman Act § 2....................2, 3, 13

## I. NATURE AND STAGE OF PROCEEDINGS

On May 5, 2011, Plaintiff Invidi Technologies Corporation filed its original Complaint against Visible World and Cablevision Systems Corporation ("CSC"), alleging that they infringe United States Patent No. 5,661,516, entitled "System and Method for Selectively Distributing Commercial Messages over a Communications Network" ("the '516 patent"). In its Answer to the Complaint, CSC informed Invidi that it had named the incorrect Cablevision entity as a defendant. (D.I. 10, 12) (Answer ¶ 3.) Yet Invidi waited until the last day available to amend the pleadings to file its First Amended Complaint ("FAC") specifying the correct Cablevision entity. (D.I. 101 Joint Mot. to Amend; D.I. 21 Joint Scheduling Order.) The parties expressly agreed in their September 13, 2012 Joint Motion to Amend the Complaint that each Defendant would each file an answer and counterclaims to the FAC by September 27, 2012. (D.I. 101 Joint Mot. to Amend.) Accordingly, Defendants each timely filed their Counterclaims on this date.

Meanwhile, pursuant to the Court's January 10, 2012 scheduling order, discovery is ongoing, with fact discovery scheduled to close on November 16, 2012. (D.I. 21 Joint Scheduling Order.) Invidi has filed its motion to dismiss with crucial factual, expert, and legal aspects of its infringement claim still being developed. *Id.*

## II. SUMMARY OF ARGUMENT

Invidi has no basis to assert the '516 patent against Visible World and Cablevision. Invidi knows this. The present lawsuit is therefore a ploy by Invidi to knock Visible World out of competition and provide its technology to Cablevision instead of Visible World's technology. Invidi's actions have been deliberate in an effort to interfere with Defendants' businesses

involving household addressable advertising solutions. Visible World and Invidi are the two providers in the market for these services.[1] (Counterclaims ¶ 31.)

Pleading standards require that Invidi's motion be decided based solely on the face of the pleadings. In addition, because fundamental elements of Invidi's infringement claim will remain contested and uncertain until discovery and the claim construction process are complete, there is no evidence for the Court to assess beyond the face of the pleadings. Invidi seeks to avoid the applicable pleading standard by ignoring the key stages of this litigation that are still to come. But the Counterclaims allege specific facts that, if subsequently proven, will support the only two aspects of the Counterclaims that Invidi contests—that Invidi's infringement claim is objectively baseless and that Invidi has violated Section 2 of the Sherman Act.

Furthermore, in arguing that the Counterclaims are untimely, Invidi ignores the procedural history in which it expressly agreed to allow Defendants to file these claims in response to the FAC that Invidi filed on the last day possible. The Counterclaims are permissible as a matter of law, both as of right, and as a matter of fairness under the Court's broad discretion over the pleadings.

Lastly, Invidi requests that the Counterclaim be severed from its infringement claim. But Invidi does not explain why severance makes sense on the facts of this case or how it would be prejudiced by keeping the Counterclaims in this action. The Court should keep the Counterclaims in this action because doing so will preserve judicial resources in light of the substantial overlap between the Counterclaims and Invidi's infringement claim.

---

[1] Visible World and Cablevision have also brought counterclaims for declaratory judgments of noninfringement and of the invalidity of Invidi's patent (Counterclaims I-II), which Invidi does not seek to dismiss.

## III. STATEMENT OF FACTS

### A. The Counterclaims

Visible World and CSC Holdings, LLC ("Cablevision") raised their Counterclaims in their respective responses to the FAC, filed on September 27, 2012 in accordance with the schedule set forth in the parties' Joint Motion to Amend the original Complaint. D.I. 101. The Counterclaims include the underlying contention that Invidi's allegations in this action are "objectively baseless," that Invidi knew these allegations to be baseless, and that Invidi pursued these baseless allegations in order to interfere with Visible World's and Cablevision's businesses and monopolize the relevant market. (Counterclaims ¶¶ 14-22, 27-28.) The Counterclaims are based not only on this litigation, but also Invidi's pre-action conduct, such as Invidi's threatening Visible World's then-current or prospective customers in order to discourage them from doing business with Visible World or using Visible World's products. (Counterclaims ¶¶ 23-26.)

As set out in the Counterclaims, Invidi's allegations are objectively baseless because Invidi does not accurately describe the type of activity that the '516 patent covers. (Counterclaims ¶ 15.) Contrary to Invidi's description in this motion, the actual language of the '516 patent "clearly define[s] the claimed invention as covering systems and methods wherein commercial messages are selected for transmission to a specific home or set of homes based on an analysis of a database of demographic information." (*Id.*) Defendants, do not engage in the type of activity that the patent actually covers. (*Id.*) Instead, Visible World's household addressable advertising solutions require Visible World's customers to utilize third-party data providers to analyze the demographic data. (Counterclaims ¶ 18.) [redacted]

[redacted] (Counterclaims ¶ 19.)

Invidi bases its infringement claim on incorrect descriptions of Defendants' services, such as the claims that:

- Visible World "offers a web-based campaign management tool, the Visible World Conductor, which enables advertisers to automate data-driven ad targeting" by "facilitat[ing] segmentation of TV ads to enable household addressable advertisement campaigns" (Am. Compl. ¶ 23)

- "[H]ousehold demographic information is stored in a database accessible to the [Visible World] products and is derived from third party demographic data repositories such as Nielsen, Experian, and Acxiom" (Am. Compl. ¶ 25)

- "Cablevision uses the information from [Visible World's] household addressable advertising system to transmit commercial messages to specific households based on the set top box address of the set top boxes associated with the household being targeted by the addressable advertisement" (Am. Compl. ¶ 35)

(Counterclaims ¶ 20.)

In addition to describing Invidi's mischaracterizations of the technology, the Counterclaims allege, based on the documents that Invidi has provided through discovery, that it knew when it sought to enforce the '516 patent against Visible World and Cablevision, that its claims were baseless. (Counterclaims ¶ 17.) [redacted] (Counterclaims ¶ 19.)

Yet despite this clear evidence, Invidi continued to threaten Visible World's customers by warning that they could be liable for patent infringement if they were to take part in a household addressable advertising trial being conducted by Visible World and Cablevision. (Counterclaims ¶ 24.) Invidi also filed this lawsuit and included Cablevision as a defendant,

notwithstanding Invidi's knowledge that its claims are baseless, in order to discourage Cablevision and others from supporting Visible World's household addressable advertising solutions. (Counterclaims ¶¶ 25-24.)

**B. Defendants' Counterclaims Are Timely: Invidi Amended its Complaint at the Last Minute Possible**

From the outset, as early as its November 14, 2011 Answer to Invidi's Complaint, Cablevision Systems Corporation informed Invidi that Invidi's allegations were erroneous because CSC is a holding company that, contrary to Invidi's allegations, does not provide cable, internet and/or voice services. (Answer ¶ 3.) CSC further explained that its wholly-owned subsidiary, CSC Holdings, LLC, is the corporate entity that does in fact provide these services. (*Id.*)

After considerable correspondence back and forth between the attorneys for Invidi and both Cablevision entities (*see, e.g.*, Ex. A (9/13/12 emails between A. Brown to S. Katz)), both Cablevision entities provided a Declaration explaining that "[CSC] is a holding company and does not provide cable, internet, and/or voice services, as alleged in Plaintiff's Complaint," as well as the fact that "[w]ith respect to the provision of cable, internet, and/or voice services, [CSC] has no operations or employees independent of its CSC Holdings, LLC subsidiary." (D.I. 101, Ex. 1 to Joint Mot. to Amend). For months Invidi said it would amend its Complaint specifying the correct Cablevision entity as defendant, yet it waited until the last day available to amend the pleadings do so. Ex. B (5/10/12 emails between S. Katz and C. Nyarady; D.I. 101 Joint Mot. to Amend; D.I. 21 Joint Scheduling Order.)

Defendants were prepared to file their Counterclaims on September 13. However, Defendants filed their Counterclaims in response to the FAC instead. This should be no surprise to Invidi. Defendants expressly negotiated for the right to do so in the September 13, 2012 Joint

Motion to Amend the Complaint. (D.I. 101) There, the parties agreed that, by September 27, 2012, Visible World and Cablevision would each file an answer and counterclaims to the FAC. (D.I. 101 Joint Mot. to Amend.) Defendants did not hide the ball. They amended the proposed Joint Motion to specifically set forth the date for counterclaims, and, out of an abundance of caution, confirmed with Invidi's counsel that this change was acceptable. Defendants asked whether Invidi was "okay with our addition to the joint motion" specifying this deadline, to which counsel for Invidi responded, "Yes the addition was fine." Ex. C (9/12/12 emails between S. Katz and A. Brown, including attached redline). Invidi's argument that the Counterclaims are untimely (D.I. 132 at 10-11) is contrary to this express agreement that Defendants could file such claims.

Invidi's argument that the filing of the Joint Motion is somehow evidence that Defendants could not believe the underlying infringement allegations to be baseless, D.I. 132 at 10, is refuted by the fact that Defendants have always maintained that this lawsuit is baseless. Agreeing to allow Invidi to name a proper party does nothing to improve Invidi's claims.

Invidi spends much of its brief trying to argue the merits of its infringement case, (D.I. 132 at 2-8), an effort that is misplaced in a motion to dismiss. Summary judgment motions cannot be filed without leave of the Court until June 4, 2013. D.I. 21. The only relevant question is whether Defendants have satisfied pleading requirements. The parties' factual contentions will continue to be explored in the on-going fact and expert discovery.

**C. Visible World's and Cablevision's Motion to Compel**

In July 2012, Defendants sought to compel Invidi to supplement its infringement contentions in order to clarify its basis for alleging infringement against them in light of the fact that Invidi provided just a single claim chart that failed to specify which aspects of its claim applied to each defendant. D.I. 133 (Declaration of Brian K. Wells in Support of Invidi

Technologies Corporation's Brief In Support of Motion To Dismiss State Law and Antitrust Counterclaims) ("Wells Decl.") Ex. 8 (7/19/12 Hearing Tr. at 18-20).[2] Defendants agreed with the Court that they were not at that point challenging which specific elements of their accused systems are alleged to match with the individual alleged claim limitations in the '516 patent "*from the plaintiff's perspective.*" *Id.* at 21-22 (emphasis added). That is because, as the Court explained, at this stage of the litigation, Invidi's allegations make clear which aspects of Visible World's technology are *claimed* to infringe on the '516 patent. But clarity as to Invidi *claims* does not mean that these allegations have any basis—a matter that will be developed through discovery and claim construction.

Invidi's argument, D.I. 132 at 9-10, 14, that somehow the motion to compel indicates Defendants' approval of the substance of the claim charts is not plausible. During the motion to compel hearing, Defendants specifically stated that the claim charts contained factual allegations concerning how the accused systems worked that Invidi knew to be false. *See* D.I. 133 (Wells Decl.) Ex. 8 (07/19/2012 Hearing Tr. at 14). Defendants expected Invidi to correct these errors, which Invidi has not done to this day.

## IV. ARGUMENT

In order to survive Invidi's motion to dismiss, Defendants' antitrust and state law counterclaims must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A plaintiff plausibly states a claim where the pleadings present "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009); *id.* at 1940-41 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

[2] There are two exhibits marked "Exhibit 8" attached to D.I. 133. This is the second.

Invidi seeks to dismiss the Counterclaims because, according to Invidi, its own patent infringement claim is not objectively baseless. But, as detailed in the facts above, Defendants have alleged specific facts that, if true, show that there is no objective basis for Invidi's claim. No more is required of Defendants at the pleading stage.

### A. Defendants Pleaded Facts Supporting their Claim that Invidi's Suit is Objectively Baseless

This Court has explained that "[w]hen deciding the motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the counterclaim. . . . The Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party." *Shionogi Pharma, Inc.* v. *Mylan, Inc.*, No. 10–1077, 2011 WL 3860680, *3 (D. Del. Aug. 31, 2011) (citations omitted). In *Shionogi Pharma*, as here, the plaintiff sought to dismiss the defendant's antitrust counterclaim because, according to the plaintiff, its patent infringement claim was not objectively baseless. The Court denied this motion because "[w]hether the underlying litigation is baseless is a factual issue not to be determined on a motion to dismiss." *Id.* at *6 (citing *In re Metoprolol Succinate Direct Purch. Antitrust Litig.*, Nos. 06–52, 06–71, 2010 WL 1485328, at *10 (D. Del. Apr. 13, 2010)). At this stage, "the court limits its review to the face of the counterclaim." *Shionogi Pharma, Inc.*, 2011 WL 3860680, *3. Provided that the Counterclaims on their face allege facts plausibly showing that Invidi's infringement suit is objectively baseless, the Counterclaims must be allowed because "[o]nly after discovery will it be possible to determine whether Counter–Defendant['s] infringement suit is founded." *Id.* at *6.

A claim is "objectively baseless" where "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc.* v. *Columbia Pics. Indus., Inc.*, 508 U.S.

49, 56 (1993).[3] Where a party adequately pleads that a patent infringement suit is objectively baseless because the infringement claim misinterprets the scope of the patent or the accused product at issue, such a claim cannot be resolved at the motion to dismiss stage. *Dicar, Inc.* v. *Stafford Corrugated Prods., Inc.*, No. 2:05–cv–5426, 2009 WL 1796053, at *4-5 (D.N.J. June 22, 2009) (citation omitted); *see also Shionogi Pharma*, 2011 WL 3860680, at *6 (refusing to dismiss counterclaim that alleged that accused product lacked a key feature of the patented design).

Contrary to Invidi's characterization of the Counterclaims as asserting mere legal conclusions (*see* D.I. 132 at 11-12, 15), the Counterclaims allege specific facts showing that Invidi's infringement claim misrepresents both what the '516 patent covers and how Visible World's technology works. Moreover, Invidi's claim that Paragraphs 17-19 of the Counterclaims do not show objective baselessness because these allegations reference Invidi's state of mind also falls flat. While these paragraphs refer to Invidi's subjective knowledge, they do so in reference to specific objective elements of the '516 patent.[4] The Counterclaims therefore adequately plead that Invidi's infringement suit is objectively baseless.[5]

---

[3] Invidi argues that it does not matter if its suit became baseless at some point after it was commenced, provided that it had probable cause at the time that it initiated its action. (D.I. 132 at 16 n.23.) But the Counterclaims argue only that Invidi's subjective belief about the validity of its claims should have been altered by discovery, and Invidi has expressly disclaimed any challenge to the subjective element of baselessness. (Compare Counterclaims ¶ 21 to D.I. 132 at 15.) In addition, because Invidi has amended its Complaint, it has actually "instituted" this new Complaint with all of the knowledge that it gained up until it filed this amended pleading. (Counterclaims ¶ 21.) Lastly, as alleged in the Counterclaims and as will be shown based on the factual record, Invidi was "aware that its infringement allegations were baseless" even before discovery began, when it "filed [its original] Complaint . . . in an effort to intimidate and discourage Visible World and its actual and potential customers." (Counterclaims ¶ 25.)

[4] Invidi also claims that Visible World at first stated its product called "Conductor" did not exist and then took a contrary position in its pleadings. (D.I. 132 at 16 n.22.) But the paragraph of Visible World's pleading at issue in fact states that "Visible World admits only that it has a product named Conductor" and that Visible World denies Invidi's description of this product. (D.I. 110, Ans. to Am. Compl. ¶ 23.) Visible World has therefore consistently challenged the accuracy of Invidi's description of Visible World's product. Moreover, Defendants have gone

Invidi also argues that Defendants "would not have joined the motion to amend had they believed that the FAC was 'objectively baseless' and its filing constituted a sham litigation." (D.I. 132 at 10.) This unsupported assertion makes no sense. That Defendants allowed the FAC to be filed and immediately chose to contest the allegations therein through the normal procedural course of filing counterclaims in no way constitutes an admission of the validity of the allegations in the FAC.

### 1. Invidi Attempts to Shift the Burden of Proof

Because the face of the Counterclaims allege facts that if proven, will support the conclusion that Invidi's infringement suit is objectively baseless, Invidi seeks to avoid the applicable pleading standard. Invidi first argues that the "Court may go beyond the pleadings" to test the Counterclaims "against the infringement contentions Invidi served upon the Defendants." (D.I. 132 at 12.) But courts have expressly held that such information is beyond the purview of evidence that may be considered at the motion to dismiss stage. Although the objectively-baseless determination turns on whether the infringement plaintiff had probable cause for bringing its infringement claim, at the motion-to-dismiss stage this assessment must be confined to the face of the complaint. *In re Wellbutrin SR Antitrust Litig.*, Nos. 04–5525, 5898, 05–396,

---

beyond "mere denials of statements in Invidi's Complaint" (D.I. 132 at 16 n.22) because, as explained above, they have detailed specific aspects of the products at issue that Invidi describes incorrectly and have also offered their own descriptions of how these products work.

[5] In *Magnetar Technologies Corp.* v. *Six Flags Theme Parks Inc.*, No. 07–127, 2011 WL 678707, at *3 (D. Del. Feb. 18, 2011), which Invidi cites (D.I. 132 at 13), the court stated that "Defendants offer no facts supporting their bald allegations that this action, or the litigation threats against others, were motivated by bad faith," an issue that Invidi does not event attempt to challenge here. *C.R. Bard, Inc.* v. *M3 Systems, Inc.*, 157 F.3d 1340 (Fed. Cir. 1998), cited by Invidi (D.I. 132 at 15) in reference to Paragraph 19 of the Counterclaims, is even more inapposite because the court was dealing with post-trial motions and assessing the sufficiency of the evidence to a degree that is not applicable at the motion to dismiss stage.

2006 WL 616292, at *6 (E.D. Pa. Mar. 9, 2006) (internal quotation marks omitted).[6] As the court in *Wellbutrin* explained, "for the purposes of this Motion to Dismiss, [the infringement plaintiff] cannot invoke the record in the underlying infringement actions to challenge factual allegations in the Complaints. The Court's probable cause analysis must therefore be based exclusively on the allegations in Plaintiffs' Complaints."[7] *Id.* at * 6-7 (denying motion to dismiss sham litigation claims).

Moreover, Invidi does not cite a single case in support of its position that the Court should treat this motion as one for summary judgment under Rule 12(d). (D.I. 132 at 12.) The law is clear that where relevant evidence might be obtained through discovery, a motion to dismiss cannot be converted to one for summary judgment. *Platt* v. *Freedom Mortg. Corp.*, No. 10–968, 2010 WL 4810652, at *3 n.2 (D.N.J. Nov. 16, 2010).[8] Discovery is not complete here.

---

**6** Similarly, Invidi claims that "the lack of probable cause must be established by 'clear and convincing' evidence." (D.I. 132 at 12-14.) But the numerous cases that Invidi cites to support this argument (*Teva Pharms. USA, Inc.* v. *Abbott Labs.*, 580 F. Supp. 2d 345 (D. Del. 2008); *PRE*, 508 U.S. at 62; *Carroll Touch, Inc.* v. *Electro Mech. Sys.*, 15 F.3d 1573, 1581-83 (Fed. Cir. 1993); *ERBE Elektromedizin GmbH* v. *Canady Tech. LLC*, 629 F.3d 1278, 1292 (Fed. Cir. 2010); *Honeywell Intern., Inc.* v. *Univ. Avionics Sys.*, 343 F. Supp. 2d 272. 325 (D. Del. 2004) (bench trial); *Globetrotter Software, Inc.* v. *Elan Computer Group*, Inc., 362 F.3d 1367, 1377 (Fed. Cir. 2004) (dealing with pre-litigation conduct)) dealt with motions for summary judgment or bench trials, where the court looked at evidence well beyond the pleadings. At this stage, however, the Court need determine only whether the Counterclaims adequately allege facts that, if ultimately proven, will show that Invidi's infringement suit is objectively baseless.

7 None of the three cases that Invidi cites in support of its claim that the Court should look beyond the FAC, at the underlying infringement contentions, are patent cases. (*See* D.I. 132 at 12.) Nor do any of these cases deal with sham litigation claims. (*Id.*)

8 Moreover, even if the Court were to find it appropriate to consider a motion for summary judgment at this stage, Defendants have not had notice and a reasonable opportunity to respond. *See Platt*, 2010 WL 4810652, at *3 n.2. At the very least, Defendants should be given leave to prepare a response to a motion for summary judgment based on the factual record. Rule 12(d) of the Federal Rules of Civil Procedure in fact requires that if a motion on the pleadings is converted to one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

In addition, where the underlying patent infringement dispute will be resolved through the claim construction process, the Court must wait for that process to occur "before deciding whether Plaintiffs' claim is objectively baseless." *Dicar*, 2009 WL 1796053, at *5. The proper test for this motion is not, as Invidi suggests, to test the "objectively baseless" standard "against the infringement contentions." (D.I. 132 at 12). Indeed, there is no way even to do so without also addressing claim construction at this point in the case.

Invidi also argues that the description of the '516 patent in the Counterclaims "does not accurately quote [the patent's] claims." (D.I. 132 at 15.) But this argument is premised on Invidi's asserted scope of the '516 patent—the very issue that cannot be resolved until the claim construction process. As in *Dicar*, "[t]he fact that the underlying dispute will be resolved at a *Markman* hearing underscores the Court's need to wait and allow the requisite claim construction proceedings to be carried out before deciding whether Plaintiffs' claim is objectively baseless." *Dicar, Inc*, 2009 WL 1796053, at *5.

Invidi's conclusory assertion that its claims referenced in Paragraph 20 of the Counterclaims "provide background information" that is not "necessary to support Invidi's infringement charge" (D.I. 132 at 15-16) also misplaces the burden at this stage. Paragraph 20 of the Counterclaims specifies three specific allegations made by Invidi that Defendants believe are false. How central these allegations are to Invidi's claims, as well as to the technologies at issue, cannot be determined until discovery and the claim construction process are complete.[9]

Invidi also claims that the Court has already determined in response to Defendants' discovery motion that Invidi's "infringement contentions adequately match up with the claim

[9] *Cheminor Drugs, Ltd.* v. *Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999), cited by Invidi (D.I. 132 at 16), does not support Invidi's argument. This case dealt with a motion for summary judgment, and thus did not decide solely on the pleading whether the misrepresentation at issue "infect[ed] the core of the litigant's case." Moreover, this case did not deal with patent infringement claims.

limitations to the accused system." (D.I. 132 at 14.) As explained above, however, the Court merely confirmed that Defendants did not seek clarification of how Invidi claimed that Visible World's technology matched up with the '516 patent. But the fact that Invidi's *allegations* are comprehensible does not prevent those allegations from ultimately being found to be objectively baseless and unsubstantiated after discovery and the claim construction process is complete.

Invidi's additional argument that that it must have probable cause to bring its claim because "patents are presumed to be valid and enforceable." (D.I. 132 at 14) has been expressly rejected:

> The presumption of validity that applies to an issued patent does not save [the patent infringement plaintiff's] motion. . . . [T]he presumption of validity is an evidentiary burden that can be rebutted. Thus, at the motion to dismiss stage, it is not controlling as to the objective prong of the *PRE* test.

*Teva Pharm. Indus., Ltd.* v. *Apotex, Inc.*, No. 07-5514, 2008 WL 3413862, at *6 (D.N.J. 2008) (citations omitted).[10]

### B. Counterclaims Allege a Violation of § 2 of the Sherman Act

Invidi asserts that because it is a "small privately held company," it cannot have sufficient market power to support an antitrust claim. (D.I. 132 at 16-17.) Invidi ironically characterizes Defendants' allegation of market power as conclusory in this conclusory manner.[11] But courts consistently hold that these types of allegations sufficiently allege market power in a Sherman Act § 2 claim for pleading purposes. That is because "the existence of antitrust injury

[10] *Q-Pharma, Inc.* v. *Andrew Jergens Co.*, 360 F.3d 1295, 1303 (Fed. Cir. 2004), cited by Invidi, is not to the contrary. The court ruled there that "Q-Pharma reasonably believed its patent to be valid in light of the statutory presumption of validity, 35 U.S.C. § 282 (2000), as well as the licenses that several companies took under the patent." The issue here, however, is not whether the '516 patent is valid, but rather, whether Invidi has properly interpreted the scope of the '516 patent and the nature of Visible World's household addressable advertising solutions.

[11] Invidi does not challenge the state law Counterclaims. If the Court rejects Invidi's arguments about objective baselessness, it should therefore uphold the state law Counterclaims regardless of how it rules on the Sherman Act § 2 Counterclaims.

is not typically resolved through motions to dismiss." *Rochester Drug Co-op., Inc.* v. *Braintree Labs.*, 712 F. Supp. 2d 308, 318 (D. Del. 2010) (internal quotation marks omitted) (denying motion to dismiss antitrust claim arising out of patent infringement case). Moreover, whether a complaint has alleged "sufficient facts as to the dangerous probability of [the defendant] obtaining monopoly power in the [relevant] market [is] 'a particularly fact-intensive inquiry'" that "[c]ourts typically should not resolve . . . at the pleading stage." *Broadcom Corp.* v. *Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007) (quoting *United States* v. *Microsoft*, 253 F.3d 34, 80 (D.C. Cir. 2001)).

The "determination of dangerous probability," which the court assesses on "the face of the complaint," is based on "factors such as significant market share coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand," with "[n]o single factor [being] dispositive." *Id.* Similarly, when considering monopoly power under a monopolization claim, the court looks at whether the defendant "had the power to extract supracompetitive prices, it possessed a dominant market share, and the market had entry barriers." *Id.* at 315.

Contrary to Invidi's characterization, the Counterclaims allege that "Invidi either currently has monopoly power" or "has a dangerous probability" of achieving such power."[12] (Counterclaims ¶ 40.) These claims are all the more plausible because the U. S. market for

[12] The Counterclaims also allege a "relevant product market for household addressable advertising solutions" in the U.S. (Counterclaims ¶¶ 29-30) and that Invidi's anticompetitive activities have maintained or enhanced its monopoly power artificially and harmed Defendants. (Counterclaims ¶¶ 31, 34-35, 41-44.) Invidi does not challenge these allegations. Invidi cites Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 441 (3d Cir. 1997), which held that contractual limitations did not create a relevant market. But there is no claim here that the market is defined by contract. Rather, the Counterclaims name the specific market (Counterclaims ¶ 29) and allege that this is a relevant market with "distinct characteristics and potential benefits [different from] the broader market for advertising" (Id. ¶ 30). Moreover, while Invidi cites this case, it does not make any argument aimed at the relevant market. (D.I. 132 at 16-17.)

household addressable advertising solutions has "few providers . . . beyond Invidi and Visible World, whom Invidi seeks to shut out with this lawsuit." (Counterclaim ¶ 31.) The Counterclaims also allege that "[t]here are significant barriers to entry in" this market, including "Invidi's anticompetitive activities." (*Id.*) Such entry barriers exist where there are "high start-up costs." *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008). Among other reasons, this market has substantial start-up costs because potential entrants into the market would have to first develop their own form of household addressable advertising solutions.[13]

### C. The Counterclaims are Timely

Invidi argues that the Counterclaims are untimely because they "were filed after the September 13, 2012 deadline for seeking leave of Court to amend pleadings." (D.I. 132 at 17.) But Invidi fails to mention that no leave was required because Defendants were not amending their initial pleadings. Instead, they were filing initial responses to Invidi's FAC. As explained above, this pleading schedule was agreed to by the parties and approved by the Court in the parties' Joint Motion setting September 27, 2012 as the deadline for Defendants to "file an answer and counterclaim to the First Amended Complaint." D.I. 101.

---

[13] These specific allegations go beyond the "single statement of market power" without "any other factors sufficient to support a finding . . . [of] monopoly power or the dangerous probability of achieving such power" that appeared in the only case that Invidi cites on this issue. *Syncsort Inc.* v. *Sequential Software, Inc.*, 50 F. Supp. 2d 318, 330 (D.N.J. 1999). The only other case that Invidi cites in its antitrust argument, *Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997), held that limitations imposed by a franchising contract did not create a relevant market. *Id.* at 441. In contrast, there is no claim here that the relevant market is defined by the bounds of a contract. Rather, the Counterclaims name a specific market—"the market for household addressable advertising solutions" (Counterclaims ¶ 29)—and allege that this constitutes a relevant market, with "distinct characteristics and potential benefits [that] differentiate it from the broader market for advertising" (Counterclaims ¶ 30). Moreover, while Invidi cites this case, it does not actually make any argument aimed at the relevant market that is specified in the Counterclaims. (*See* D.I. 132 at 16-17.)

Invidi claims that its FAC did not extend the deadline for counterclaims because Defendants requested this amendment. (D.I. 132 at 17.) But this ignores the fact that Invidi explicitly agreed to the provision that allowed the Counterclaims to be filed by this date. Moreover, the FAC was filed on the last day allowed by the Court's initial scheduling order because Invidi delayed filing its amended complaint naming the proper Cablevision entity until the last possible moment. *See* D.I. 104 (filed 09/14/2012).

Invidi also claims that because the only change in the FAC was the Cablevision entity at issue, Counterclaims on broader issues are not allowed. (D.I. 132 at 17-18.) But the case that Invidi cites in support of this argument is from another circuit.[14] This Court, however, has adopted a permissive approach on the issue of whether defendants may, as of right, add counterclaims in response to an amended complaint. *See E.I. DuPont de Nemours & Co.* v. *Millennium Chems., Inc.*, No. C.A. 97–237, 1999 WL 615164, at *4 (D. Del. Aug. 2, 1999); *Standard Chlorine of Delaware, Inc.* v. *Sinibaldi*, Civ. A. No. 91–188, 1995 WL 562285, at *2 (D. Del. Aug. 24, 1995); *Joseph Bancroft & Sons Co.* v. *M. Lowenstein & Sons. Inc.*, 50 F.R.D. 415, 418-19 (D. Del. 1970). This approach allows "the defendant to always bring new counterclaims without regard to the scope of the amendment." *Mun. Revenue Svcs., Inc. v. Xspand, Inc.*, No. 4:05CV671, 2006 WL 91358, at *2 (M.D. Pa. Jan. 12, 2006) (allowing counterclaim where plaintiff amended to add a party)[15]

---

[14] Moreover, even in that case, *Wechsler* v. *Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402. 417-19 (S.D.N.Y. 2002), the court considered whether to use its discretion to allow the counterclaims *nunc pro tunc*. The court did not allow them because, unlike here, they were filed long after discovery closed, without any justification for delay, and would have prejudiced the opposing party. *Id.* at *419.

[15] Furthermore, most courts that engage in a more detailed analysis do not consider the scope of the amendment to be an important consideration. Noting that the issue of amendments to pleadings falls "squarely within the court's discretion," one court based its decision of whether to allow new counterclaims in response to an amended complaint on whether (1) the counterclaim would prejudice the plaintiff; (2) the defendant sought leave; (3) the delay in filing the

The court in *Mun. Revenue* called this the "enlightened approach under the circumstances," where the plaintiff would not suffer any prejudice from the new counterclaim. *Id.* at *3. Prejudice entails "such things as re-opening discovery and delaying trial." *Id.* Invidi does not explain how it will be prejudiced by allowing the Counterclaims at this early stage of the litigation. Rather, Invidi bases its arguments on technicalities dealing with the scope of its amendment and that the Counterclaims came two weeks after the Court's initial deadline for amending the pleadings without a motion for leave to amend. (D.I. 132 at 17-18.) As detailed above, Invidi is responsible for this timing.

None of these reasons qualify as prejudice under *Mun. Revenue*. Here, as in that case, discovery is still open and trial is far off, with the claim construction process and summary judgment scheduled to occur in the interim.[16]

Moreover, even if Visible World and Cablevision could not file the Counterclaims as of right, the Court still has "discretion to allow [them] to file counterclaims pursuant to Fed. R. Civ. P. 13(f)," where "justice requires." *Mun.Revenue*, 2006 WL 91358, at *3 n.3. In addition to the factors explained above, Defendants could not have filed the Counterclaims in immediate response to the initial Complaint, because evidence that Defendants obtained over the course of

---

counterclaim was excusable; and (4) the interests of justice required allowing the counterclaim. *QRG, Ltd.* v. *Nartron Corp.*, No. 1:06-CV-1777, 2007 WL 1202967, at *3 (M.D. Pa. Apr. 23, 2007). The fact that the amended complaint in *QRG* was "not substantively different . . . from the original complaint" and did not "provide any new basis in particular . . . for the counterclaim," did not provide "a sufficient basis for striking the counterclaim, nor [did the court] view it as a determinative factor regarding prejudice." *Id.* As explained above, even were the Court to assess the factors listed in *QRG*, they weigh in favor of allowing the Counterclaims to proceed.

[16] Invidi's purported support is not to the contrary. (D.I. 132 at 17). *Dimensional Commc'ns., Inc.* v. *OZ Optics, Ltd.*, 148 F. App'x 82, 84 (3d Cir. 2005),. dealt with a motion to amend an answer made over four months after the deadline to amend the pleadings. In contrast, the Third Circuit "has not addressed [our] issue of whether a defendant may, as of right, add a counterclaim when responding to an amended complaint." *Mun. Revenue*, 2006 WL 91358, at *2. Also, unlike here, the defendant in *Dimensional Commc'ns* engaged in undue delay and its requested amendment would have "prejudiced the plaintiff." *Id.*, at 85.

discovery is essential to showing that Invidi was aware that its infringement action was baseless yet pursued it (as well as its pre-action conduct) in order to interfere with Visible World's business. [redacted] In addition, a party's subjective intent, by its very nature, will not likely be known until the party's internal communications are available.[17] Furthermore, the Counterclaims were filed a mere two weeks after the Court's initial deadline for amending the pleadings.

**D. The Counterclaims Should be Kept in this Action**

Invidi argues that the Counterclaims should be severed from its infringement action and stayed until the liability phase of the action is complete. But courts regularly maintain antitrust and state law counterclaims in the underlying infringement suit. In fact, the case cited by Invidi has more recently been cited to support the proposition that "the district court retains considerable discretion in determining whether the severance of antitrust and patent issues would best serve the convenience of the parties, avoid prejudice, and minimize expense and delay." *In re Theodor Groz & Sohne*, 972 F.2d 1352, 1992 WL 188908, at *2 (Fed. Cir. 1992) (citing *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)).[18]

---

[17] Should Invidi desire discovery on the Counterclaims, Defendants would agree to extend discovery on these narrow topics. Such limited discovery will not cause undue delay.

[18] The other two cases cited by Invidi on this point are inapposite. (D.I. 132 at 18.) In *Transmirra Products Corp.* v. *Monsanto Chemical Co.*, 27 F.R.D. 482, 483 (S.D.N.Y. 1961), unlike here, there was a parallel antitrust action that overlapped with the antitrust counterclaim. And in *Fischer & Porter Co.* v. *Sheffield Corp.,* 31 F.R.D. 534 (D. Del. 1962), the court decided

The district court in *Theodor Groz* gave due consideration to whether severance of antitrust counterclaims "would best serve the convenience of the parties, avoid prejudice, and minimize expense and delay." *Id.* The court thus upheld the district court's "finding that the commonality of the patent and antitrust issues presented made severance and stay of discovery an unworkable and inefficient use of judicial resources." *Id.* Moreover, the court should determine whether to sever the Counterclaims "foremost by the merits of [the individual] case." *Synopsys, Inc.* v. *Magma Design Automation*, No. C.A. 05-701, 2006 WL 1452803, at *4 (D. Del. May 25, 2006). Yet Invidi fails to offer any explanation as to why it will be more efficient to sever the Counterclaims at issue here from the infringement claims.

The court in *Synopsys* reasoned that "were the court to bifurcate, the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other. In addition, . . . both juries would need to be educated in the same relevant technology." *Id.*; *see also Quantum Loyalty Sys., Inc.* v. *TPG Rewards, Inc.*, No. 09–022, 2011 WL 6652346, at *4 (D. Del. Dec. 22, 2011) (refusing to sever counterclaims involving the plaintiff's "bad faith assertion of a patent"), *rev'd* in part on other grounds by 2012 WL 1134779 (D. Del. Apr 4, 2012)); *Nabi Biopharms.* v. *Roxane Labs., Inc.*, No. 2:05-CV-889, 2007 WL 894473, at *8 (S.D. Ohio Mar. 21, 2007) (denying motion to sever where "objectively baseless infringement" issues).

The court concluded that judicial efficiency weighed against severance. Invidi's point that the Counterclaims must show that the infringement action is "objectively baseless," therefore actually militates against severance. Because the trier of the Counterclaims must also

---

based on the circumstances before it that keeping the cases together would significantly delay the patent case.

consider the merits of the infringement claims, a subsequent action on the Counterclaims would involve a wholesale duplication of the infringement action.[19] Invidi's threats to Defendants' customers are also relevant to Defendants' defenses here, such as laches and estoppel. It makes no sense to present such evidence twice.

Lastly, Invidi asserts that because the issue of "liability has been bifurcated from other issues that will be affected by the liability ruling," the Counterclaims should also be bifurcated. (D.I. 132 at 18.) Yet Invidi does not explain how the Counterclaims are similar to these other unnamed issues. This vague generalization does not provide a reason for severing the Counterclaims when doing so will constitute an inefficient use of judicial resources.

## V. CONCLUSION

As Defendants have satisfied the pleading requirements for Counterclaims III-VI, they respectfully request that Invidi's motion to dismiss Counterclaims III-VI be denied.

[19] At the very least, any decision on severance should be deferred because it is too early to determine the degree to which the claims overlap. *See Matsushita Elec. Indus. Co.* v. *CMC Magnetics Corp.*, No. C 06-04538, 2007 WL 219779, at *2-3 (N.D. Cal. Jan. 29, 2007) (whether to hold one or two trials "is a tough judgment call that will be better informed after" discovery).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Regina S.E. Murphy*

Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com
*Attorneys for Visible World, Inc. and CSC Holdings LLC*

OF COUNSEL:

John E. Nathan
Catherine Nyarady
Andrew S. Brown
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Visible World, Inc. and CSC Holdings LLC*

Benjamin Hershkowitz
R. Scott Roe
Justin Solomon Nematzadeh
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

*Attorneys for CSC Holdings LLC*

November 14, 2012 - Original Filing Date
6693537.5
November 20, 2012 - Redacted Filing Date

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 14, 2012, upon the following in the manner indicated:

Thomas L. Halkowski, Esquire — *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Frank E. Scherkenbach, Esquire — *VIA ELECTRONIC MAIL*
Steven R. Katz, Esquire
Brian K. Wells, Esquire
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
*Attorneys for Plaintiff*

*/s/ Regina S.E. Murphy*

Regina S.E. Murphy (#5648)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 20, 2012, upon the following in the manner indicated:

Thomas L. Halkowski, Esquire — *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Frank E. Scherkenbach, Esquire — *VIA ELECTRONIC MAIL*
Steven R. Katz, Esquire
Brian K. Wells, Esquire
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
*Attorneys for Plaintiff*

*/s/ Regina S.E. Murphy*
Regina S.E. Murphy (#5648)